# United States Court of Appeals
*for the*
# Fifth Circuit

Case No. 26-20263

KASHYAP PATEL,

*Appellant,*

v.

CESARE FRANK FIGLIUZZI, JR.,

*Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS IN CASE NO. 4:25-CV-2548,
HONORABLE GEORGE C. HANKS, JR., U.S. DISTRICT JUDGE

## REPLY BRIEF FOR APPELLANT KASHYAP PATEL

JASON C. GREAVES
BINNALL LAW GROUP
*Attorney for Appellant*
717 King Street, Suite 200
Alexandria, Virginia 22314
(703) 888-1943
jason@binnall.com

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of Fifth Circuit Rule 28.2.1, have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

Plaintiff-Appellant

- Kashyap P. Patel

Defendant-Appellee

- Cesare Frank Figliuzzi, Jr.

Counsel for Plaintiff-Appellant

- Jason C. Greaves, Binnall Law Group, PLLC

Counsel for Defendant-Appellee

Willkie Farr & Gallagher LLP:

- Marc A. Fuller, Jackson Walker LLP
- N. Scott Fletcher, Fletcher Held, PLLC
- Kenneth P. Held, Fletcher Held, PLLC
- Abigail A. Lahvis, Jackson Walker LLP
- Peter Steffensen, Southern Methodist University

- Maggie I. Burreson, Jackson Walker LLP
- Thomas S. Leatherbury, Thomas S. Leatherbury Law, PLLC

Persons/Entities with Financial Interest in the Outcome

No other persons, associations of persons, firms, partnerships, corporations, subsidiaries, affiliates, parent corporations, guarantors, insurers, or other legal entities are known to have a financial interest in the outcome of this litigation.

*/s/ Jason C. Greaves*
Jason C. Greaves

*Attorney for Plaintiff-Appellant*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS .......................................... i

TABLE OF CONTENTS .......................................... iii

TABLE OF AUTHORITIES .......................................... iv

I. "Reportedly…visible at nightclubs far more" than FBI HQ is Capable of a Defamatory, Factual Meaning. .......................................... 2

A. Appellee ignores the actual import of his statement. .......................................... 2

B. The context confirms that a reasonable viewer could take the statement as a factual charge. .......................................... 6

C. At a minimum, the statement's meaning is a question for the jury. .......................................... 12

II. The Court Should Not Rely on Appellee's Actual Malice Argument to Affirm .......................................... 13

CONCLUSION .......................................... 22

CERTIFICATE OF SERVICE .......................................... 24

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS .......................................... 25

# TABLE OF AUTHORITIES

## Cases

*Belli v. Orlando Daily Newspapers, Inc.*,
389 F.2d 579 (5th Cir. 1967) ............ 13

*Beneficient v. Gladstone*,
No. 6:23-cv-376, 2024 WL 2338256 (E.D. Tex. May 22, 2024) ...... 11, 12

*Bentley v. Bunton*,
94 S.W.3d 561 (Tex. 2002) ............ 3, 4, 15, 18, 22

*Campbell v. Clark*,
471 S.W.3d 615 (Tex. App.—Dallas 2015, no pet.) ............ 11

*City of Keller v. Wilson*,
168 S.W.3d 802 (Tex. 2005) ............ 7

*Dallas Morning News, Inc. v. Tatum*,
554 S.W.3d 614 (Tex. 2018) ............ 13

*Dickson v. Lilith Fund for Reprod. Equity*,
647 S.W.3d 410 (Tex. App.—Amarillo 2021) ............ 7

*Dickson v. Lilith Fund for Reprod. Equity*,
647 S.W.3d 410 (Tex. App.—Amarillo 2021), *aff'd sub nom. Lilith Fund for Reprod. Equity v. Dickson*, 662 S.W.3d 355 (Tex. 2023) ........ 6

*Greenbelt Cooperative Publishing Ass'n v. Bresler*,
398 U.S. 6 (1970) ............ 5

*Harte–Hanks Communications, Inc. v. Connaughton*,
491 U.S. 657 (1989) ............ 21

*Herring Networks, Inc. v. Maddow*,
445 F. Supp. 3d 1042 (S.D. Cal. 2020) ............ 7, 8

*Hustler Magazine, Inc. v. Falwell*,
485 U.S. 46 (1988) ............ 4, 9

*Letter Carriers v. Austin*,
418 U.S. 264 (1974) ............ 3, 5

*McDougal v. Fox News Network, LLC*,
489 F. Supp. 3d 174 (S.D.N.Y. 2020) .................................................. 7, 8

*Milkovich v. Lorain Journal Co.*,
497 U.S. 1 (1990)............................................................................ 3, 5

*New Times, Inc. v. Isaacks*,
146 S.W.3d 144 (Tex. 2004)............................................ 9, 15, 16, 17, 18

*Newton v. National Broadcasting Co.*,
930 F.2d 662 (9th Cir. 1990) .................................................... 14, 20, 21

*Palin v. New York Times Co.*,
482 F. Supp. 3d 208 (S.D.N.Y. 2020) ..................................................... 14

*Pring v. Penthouse International, Ltd.*,
695 F.2d 438 (10th Cir. 1982) ................................................................. 5

*Reuland v. Hynes*,
460 F.3d 409 (2d Cir. 2006) ...................................................................... 4

*Rosenblatt v. Baer*,
383 U.S. 75 (1966)..................................................................................... 5

*Saenz v. Playboy Enterprises, Inc.*,
841 F.2d 1309 (7th Cir. 1988) ................................................. 14, 18, 19

*Smith v. McMullen*,
589 F. Supp. 642 (S.D. Tex. 1984)............................................................ 6

*Turner v. KTRK Television, Inc.*,
38 S.W.3d 103 (Tex. 2000)................................................................. 3, 12

On MSNBC's Morning Joe, Appellee asserted that FBI Director Kash Patel was "reportedly . . . visible at nightclubs far more" than at FBI Headquarters. Approximately one week later, Jonathan Lemire, a Morning Joe co-host, said MSNBC had not "verified that claim." No one was treating the assertion as a joke, or hyperbole. And yet, Appellee asks this court to treat his assertion of a falsifiable "fact" as just that, a joke.

Appellee's argument rests on a straw man argument, that the only possible reading is a literal clock-hours comparison he calls impossible and therefore hyperbolic. Not only is that just wrong as such a comparison is actually possible—people are regularly fired over clock-hour comparisons of how much time they work against how much time they don't—Appellee's statement conveys a falsifiable assertion of fact: that Director Patel visited nightclubs at the expense of his job.

Exaggeration in a lie does not turn the lie into hyperbole, or a joke, under the law. The rule is the reasonable viewer's perception, and whether a reasonable factfinder could find a provably false fact. And

here, finding that provably false fact is not hard. MSNBC did. A jury could as well, and, under prevailing law, should be given the opportunity.

Appellee's actual-malice fallback similarly fails. He knew he was lying and tried to hide the lie behind a façade of "reports." Those reports did not and do not exist. The dismissal should be reversed.

## I. "Reportedly . . . visible at nightclubs far more" than FBI HQ is Capable of a Defamatory, Factual Meaning.

### A. Appellee ignores the actual import of his statement.

Appellee's central premise is that he cannot be held liable because no reasonable listener would believe that Dir. Patel "actually spent more hours physically in a nightclub than he has spent in his office building," therefore making his statement hyperbolic. Appellee's Br. 30–31 (quoting ROA.384). Besides being inaccurate because Dir. Patel could actually spend more time anywhere else other than his office, that framing misstates what was conveyed: that Dir. Patel, as fact, frequents nightclubs at the expense of his job. Opening Br. 25. Appellee's brief does not explain why a reasonable viewer could not take the statement that way; it argues only that a different, literal clock-hours reading is

implausible. Though even that argument fails because it is plausible given skipping work for not work is often treated as a terminable offense.

Regardless, the law does not require literalism, as the "dispositive question" is whether "the statements . . . imply an assertion" of a provably false fact. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21 (1990). The rub is and always has been the "reasonable person's perception," and here, even MSNBC thought it no joking matter. *Bentley v. Bunton*, 94 S.W.3d 561, 579 (Tex. 2002) (quoting *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 114 (Tex. 2000)).

Appellee's statement conveys two verifiable facts: (1) Dir. Patel has been going to nightclubs, and (2) that conduct has come at the expense of his presence at FBI Headquarters. Either Dir. Patel has been frequenting nightclubs as FBI Director or he has not. He has not even entered one. ROA.8. And Appellee does not contend otherwise. The "far more" comparison does not convert those factual assertions into a joke. Even hyperbole loses its protection when it is "used in such a way as to convey a false representation of fact." *Letter Carriers v. Austin*, 418 U.S. 264, 286 (1974). Exaggerating the *degree* of a fabricated fact does not make the fabricated fact protected. *See Reuland v. Hynes*, 460 F.3d 409, 414 (2d

Cir. 2006) (hyperbole is not entitled to First Amendment protection where it "(1) would reasonably have been perceived as an assertion of fact, (2) was false, and (3) was made with knowledge or reckless disregard of its falsity" (citing *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56–57 (1988))); *id*. at 423 (Winter, J., dissenting) ("[U]nprotected speech does not gain First Amendment protection by being stated in exaggerated form."). Unlike in *Reuland*, where "nothing in the record" showed the statement was false, *id*. at 414 (majority opinion), falsity here is established. ROA.8.

Appellee also head-scratchingly argues that Dir. Patel "mischaracteriz[es]" the remark because Appellee never said that Dir. Patel "entered a nightclub" or was derelict in his duties. Appellee's Br. 34. But again, defamation law looks to a reasonable viewer's "perception of the entirety of a publication." *Bentley*, 94 S.W.3d at 579. Whether Appellee's words are taken literally or—on Appellee's own reading—as an exaggerated way of saying the Director is out at nightclubs instead of working, the factual core is the same: nightclub-going at the expense of the job. And Appellee's footnote that merely entering a nightclub is not defamatory, Appellee's Br. 34 n.7, obfuscates that his defamatory

comment and our claim isn't about someone going clubbing, it is about Appellee's false assertion that the Director of the Federal Bureau of Investigation spends more time carousing than collaring criminals, and its equally false implications described repeatedly *supra*. This is obvious.

And *Rosenblatt v. Baer*'s protection for "[c]riticism of those responsible for government operations," 383 U.S. 75, 85 (1966), does not extend to inventing facts about them. *See Milkovich*, 497 U.S. at 18–19. Appellee's own authorities support as much. *Letter Carriers v. Austin*, 418 U.S. 264 (1974), and *Greenbelt Cooperative Publishing Ass'n v. Bresler*, 398 U.S. 6 (1970), involved epithets—"scab," "traitor," "blackmail"—hurled at conduct that was itself undisputed. Appellee's Br. 24. *Pring v. Penthouse International, Ltd.* rejected a claim where "the incidents charged were impossible." *Id.* at 31 (citing 695 F.2d 438, 443 (10th Cir. 1982)). And in *Lilith Fund*, the accusation that an abortion fund was a "criminal organization" engaged in "murder" was "opinion masquerading as a statement of fact uttered in the course of advocating for a change in law," in a debate in which the audience knew the underlying conduct was then lawful. *Dickson v. Lilith Fund for Reprod. Equity*, 647 S.W.3d 410, 416 (Tex. App.—Amarillo 2021), *aff'd sub nom.*

*Lilith Fund for Reprod. Equity v. Dickson*, 662 S.W.3d 355 (Tex. 2023). Going to nightclubs is none of those things. It is not an epithet, it is not a contested moral label, and it is not impossible. It is verifiable conduct.

Additionally, Appellee's effort to distinguish Dir. Patel's cited cases in a footnote, concedes their principle. *See* Appellee's Br. 31 n.5. He acknowledges that *Smith v. McMullen* "recogniz[ed] that part of [the] challenged statement was hyperbolic, but that the statement in its entirety rendered its as-a-whole meaning literal." *Id.* (citing *Smith v. McMullen*, 589 F. Supp. 642 (S.D. Tex. 1984)). That is precisely one of Dir. Patel's arguments: whatever coloring "far more" supplies, the statement *as-a-whole* conveys a verifiable charge.

Lastly, Appellee contends that Dir. Patel "concedes" the statement is "inherently improbable." Appellee's Br. 31 (citing Opening Br. 9). That passage of the Opening Brief, however, addresses actual malice. It goes to Appellee's recklessness, not a concession that viewers would have understood him to be joking.

### B. The context confirms that a reasonable viewer could take the statement as a factual charge.

Appellee argues that cable news talk shows are "known for pitched, barbed commentary," relying on two out-of-circuit district court

decisions. Appellee's Br. 27–30 (citing *McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174 (S.D.N.Y. 2020), and *Herring Networks, Inc. v. Maddow*, 445 F. Supp. 3d 1042 (S.D. Cal. 2020)). Neither decision, however, stands for the premise that anything said on a news talk show is presumptively non-factual, non-defamatory, and non-actionable. And besides, Texas law recognizes no such categorical rule and arguably Texas Courts would not find such opinions from courts in New York and California particularly persuasive. Texas courts, applying Texas law, instead examine the particular communication, considering "a myriad of circumstances, including such things as 'accompanying statements, headlines, pictures, and the general tenor and reputation of the source itself.'" *Dickson v. Lilith Fund for Reprod. Equity*, 647 S.W.3d 410, 414 (Tex. App.—Amarillo 2021) (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 811 (Tex. 2005)).

Both cases Appellee relies upon are readily distinguishable. In *McDougal*, Tucker Carlson made statements on his own opinion program, in a monologue he expressly introduced by "stipulating" to a third party's account "for the sake of argument." 489 F. Supp. 3d at 184. The court found that these "disclaimers would put any reasonable viewer

on notice that Carlson himself 'doubt[s] the veracity of the source of these statements' and that the listener should as well." *Id.* The court also found that the word at issue—"extortion"—was "loose, figurative, or hyperbolic language." *Id.* at 183. In *Herring Networks*, Rachel Maddow made the statement on her own show, "where she is invited and encouraged to share her opinions with her viewers," while she was providing commentary on a specific article from *The Daily Beast*. 445 F. Supp. 3d at 1049–50. The court reasoned that "Maddow's show is different than a typical news segment where anchors inform viewers about the daily news." *Id.* at 1050.

None of those features is present here. Appellee was not a host delivering an opinion monologue; he was a guest commentator, appearing as a former senior FBI official. ROA.8. He was asked a serious question about the Director's performance and visibility at the FBI. ROA.118. And he invoked unnamed "reports" to signal that his claim was sourced. A program mixing news with commentary is the type of setting where a viewer may reasonably take a former FBI official's report of what has "reportedly" been happening at the FBI as fact.

Appellee's additional authorities only underscore the distinction. In *Hustler Magazine*, the publication was labeled a "parody" of a liquor advertisement, and "[i]n small print at the bottom of the page, the ad contain[ed] the disclaimer, 'ad parody—not to be taken seriously.'" 485 U.S. at 48. The jury found that the parody "could not 'reasonably be understood as describing actual facts about [respondent] or actual events in which [he] participated.'" *Id.* at 49, 57 (quoting App. to Pet. for Cert. C1). In *New Times*, the satire was flagged by an absurd fictional premise, fabricated quotations, and a captioned photograph of a smiling child, from which a reader who "is no dullard" would recognize it. *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 157–58 (Tex. 2004).

Appellee's statement contains none of those signals: no parody label, no disclaimer, no absurd fictional premise, no fabricated quotations, no humorous framing. Precisely because the ordinary viewer is "no dullard," he understands that "reportedly" means something has been reported.

Simply because Appellee began his sentence with "yeah, well" is of no consequence. It is a conversational lead-in, not a disclaimer, and it tells the viewer nothing about whether what follows is fact or fiction. But

once Appellee used the word reported, it was a signal to the audience that he was relaying information that others have reported. This is the opposite of a cue that he is riffing, exaggerating, or speaking in jest. An ordinary listener would not hear a former FBI assistant director preface an accusation with “reportedly” and conclude that he is about to make something up.

Appellee also says the remark “end[ed] after a single sentence, with no further elaboration.” Appellee’s Br. 33. But Appellee went on to explain why Dir. Patel’s apparent absence mattered: “if he’s really trying to run things without any experience level, things could be bad. If he’s not plugged in, things could be bad, but he’s allowing agents to run things. So we don’t know where this is going.” ROA.118. Appellee’s brief labels this “more sarcastic commentary,” Appellee’s Br. 18, but this was an assessment of the consequences of a Director who is “not plugged in” because he is too busy partying. A reasonable listener would view this as lending credence to his assertion.

Appellee’s fallback—that “reportedly” was really a reference to the various articles about Dir. Patel’s social life, and that “nightclubs” was “shorthand for Patel’s various reported nightlife activities,” Appellee’s

Br. 33 & n.6—is a factual argument about what Appellee meant and what viewers understood. It is not a basis for dismissal. None of the articles Appellee cites reported that Dir. Patel was attending nightclubs. A hockey game is not a nightclub. A UFC fight is not a nightclub. And as Dir. Patel explained below, the Las Vegas social club Appellee now points to is not a nightclub either; his membership predated his confirmation, and there is no report that he has even visited it as Director. ROA.257–58.

Lastly, Appellee's attempt to distinguish *Campbell v. Clark*, 471 S.W.3d 615 (Tex. App.—Dallas 2015, no pet.), and *Beneficient v. Gladstone*, No. 6:23-cv-376-JDK, 2024 WL 2338256 (E.D. Tex. May 22, 2024), on the ground that those cases involved longer publications, Appellee's Br. 28 n.4, also misses the mark. Neither decision turned on word count. In *Campbell*, the court rejected a rhetorical-hyperbole defense because, unlike the campaign website in *Rehak*, the publications' tone "was not 'exaggerated, provocative and amusing,'" and the publications "did not employ extravagant exaggeration for rhetorical effect" in making objectively verifiable charges. 471 S.W.3d at 627. Notably, the court found that the tone of the publications "was set by the

statement 'Children Ages 5–17 *Reportedly* Sexually Abused by Kaufman County Commissioner Ray Clark's Nephew.'" *Id.* (emphasis added). In *Beneficient*, the court rejected a rhetorical-hyperbole defense to a *Wall Street Journal* article and a reporter's tweet because, read in full context, their gist was not extravagant exaggeration employed for rhetorical effect. 2024 WL 2338256, at *11 n.5. The lesson of both cases is that a verifiable charge presented in a serious, sourced manner is not hyperbole. Brevity does not change that; a single sentence attributed to "reports" by a former FBI official on national television can defame as effectively as an anonymous mailer.

### C. At minimum, the statement's meaning is a question for the jury.

Appellee emphasizes that meaning is a question of law in the first instance. Appellee's Br. 26. That is true—but only up to a point. "Whether a publication is capable of a defamatory meaning is initially a question for the court. But when a publication is of ambiguous or doubtful import, the jury must determine its meaning." *Turner*, 38 S.W.3d at 114 (citation omitted). The Texas Supreme Court has since explained that when a court determines that a statement "is capable of at least one defamatory and at least one non-defamatory meaning," then "it is for the jury to

determine whether the defamatory sense was the one conveyed." *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 632 (Tex. 2018) (citation omitted). And this Court has reversed a Rule 12 dismissal on this ground. *Belli v. Orlando Daily Newspapers, Inc.*, 389 F.2d 579, 584 (5th Cir. 1967) (applying Florida law) (reversing dismissal; although "[t]he defendants make a case—just barely—for the view that the article is capable of being reasonably interpreted as non-defamatory," because it was "also capable of carrying a defamatory meaning, it is for the jury to decide whether the words were in fact so understood").

Appellee's arguments ask the Court to accept his characterization of his words over the plain meaning alleged in the Complaint. That is a jury's task, not a court's task on a motion to dismiss. The district court erred by resolving the question against Dir. Patel as a matter of law.

## II. The Court Should Not Rely on Appellee's Actual Malice Argument to Affirm

Appellee's actual malice argument rests on a single proposition. Because this case involves a "threshold question[] of meaning," he says, actual malice "requires a showing that the defendant intended or knew of the alleged false meaning," and Dir. Patel has not alleged facts showing

that Appellee "intended a literal meaning or knew his remark would be understood literally." Appellee's Br. 37–38. Each of his remaining points—that the statement's improbability and his failure to verify it are "fully consistent with" an unintended joke—depends on that premise. *Id.* at 38. Appellee's brief, however, all but confirms that he did, in fact, know, and intend, the false meaning behind his statement.

As an initial matter, Appellee cites *Newton v. National Broadcasting Co.*, 930 F.2d 662, 681 (9th Cir. 1990), *Saenz v. Playboy Enterprises, Inc.*, 841 F.2d 1309, 1318 (7th Cir. 1988), and *Palin v. New York Times Co.*, 482 F. Supp. 3d 208, 217–18 (S.D.N.Y. 2020), for the premise that Dir. Patel must show that Appellee actually intended the false meaning of his statement or knew of the alleged false meaning. Appellee's Br. 37. These cases generally apply where the claim is one for defamation by implication or impression, or where the defamatory statement is subject to multiple meanings. *See Palin*, 482 F. Supp. 3d at 217–18. Dir. Patel maintains that Appellee's statement is only subject to one meaning. As discussed, Appellee's statement conveys that Dir.

Patel has been frequenting nightclubs, and this is why he has not been visible at FBI headquarters. Appellee's assertion that his statement is not actionable because it was hyperbolic does not otherwise change that this is a straightforward defamation per se claim where Appellee's own words attribute Dir. Patel's apparent absence to his alleged nightclub attendance. That is the only meaning of his words. And as discussed in the Opening Brief, Dir. Patel's Complaint satisfies the actual malice standard in this context.

Regardless, even if this Court were to agree with Appellee that Dir. Patel bears the burden of showing Appellee intended the defamatory meaning or knew of the defamatory meaning, Dir. Patel satisfies this standard as well. As the court held in *New Times*, in such defamation contexts where meaning is in question, and it is not a libel by impression claim, the appropriate inquiry is: "did the publisher either know or have reckless disregard for whether the article could reasonably be interpreted as stating actual facts?" *New Times*, 146 S.W.3d at 163 (citing *Bentley*, 94 S.W.3d at 603).

The plaintiffs in *New Times* failed that standard because of what the summary judgment record showed. The article there was a satire, published in an alternative weekly as commentary on a then-existing controversy, that attributed absurd quotations to a district attorney and a judge. *Id.* at 158–61. In support of summary judgment, the article's author, a fellow staff writer, and the paper's editor-in-chief each submitted detailed affidavits stating that they never intended the article to be taken as fact and describing the "very specific steps" they took "to make sure that this was obviously a satire," such as making the protagonist a six-year-old in ankle shackles and "inventing [a] religious group [called] 'GOOF.'" *Id.* at 164. The court held that those affidavits were "clear, positive, and direct," and that the plaintiffs' contrary evidence—drawn largely from the defendants' deposition testimony, and showing at most that the defendants intended to ridicule the officials and later acknowledged that some readers had been fooled—did not raise a fact issue. *Id.* at 164–68. The newspaper's prompt clarification in its next

edition and its explanatory responses to readers, the court added, "evidence[d] a lack of actual malice." *Id.* at 166.

This case is the opposite. Appellee was not writing an obvious satire, and he has submitted no evidence of what he intended—nor could he at this stage in the litigation. He was asked, as a former senior FBI official, why Dir. Patel had been "less visible" at the Bureau. ROA.118. He answered that question by attributing to "reports" the claim that the Director had been "visible at nightclubs far more than he has been on the seventh floor of the Hoover building." ROA.8. He then built on that answer: "If he's not plugged in, things could be bad, but he's allowing agents to run things." ROA.118. In doing so, Appellee knew that his audience would understand him to be saying, as fact, that Dir. Patel is neglecting his job. Appellee's brief confirms as much: he describes his remark as having "pithily pointed . . . out" that Dir. Patel spent his first months in office "making headlines for a 'jet-setting' social life and for cutting back on meetings with FBI agents." Appellee's Br. 35. In other words, Appellee meant to convey that Dir. Patel was out socializing

instead of working—the very message the Complaint alleges is false. The Complaint also alleges that Appellee invoked "reports," which he did not have, "to make the insidious insinuation that he was privy to insider information." ROA.10. At a minimum, those allegations plausibly show that Appellee recklessly disregarded whether his statement "could reasonably be interpreted as stating actual facts." *New Times*, 146 S.W.3d at 163 (citing *Bentley*, 94 S.W.3d at 603).

Appellee's remaining cases are likewise unpersuasive. In *Saenz*, New Mexico's secretary of corrections, who had previously served with the U.S. Office of Public Safety in Latin America, sued *Playboy* and the author of an article about a deadly prison riot. 841 F.2d at 1311–12. The article did not say that Saenz had tortured anyone but reported that the agency for which he had worked was abolished amid charges of complicity in torture, and that his office in Montevideo had been located where torture "reportedly took place." *Id.* at 1312. Saenz claimed that those passages implied that he was an accomplice to torture. *Id.* at 1312–13.

The Seventh Circuit held that whether the article carried that implication was a question for the jury, but affirmed summary judgment for the defendants on actual malice. *Id.* at 1315. It held that "where the plaintiff is claiming defamation by innuendo," he must show by clear and convincing evidence "that the defendants intended or knew of the implications that the plaintiff is attempting to draw from the allegedly defamatory material." *Id.* at 1318. Saenz could not do so. His evidence—principally the author's deposition admission that he had no evidence that Saenz participated in torture—showed at most that the article was "capable of supporting false and defamatory implications of which Morris and Playboy, according to their uncontradicted affidavits, were unaware." *Id.* at 1318–19. That lack of evidence, the court reasoned, "tends to support the defendants' contention that they did not intend or believe that the article so accused Saenz." *Id.* at 1319.

None of that is true here. *Saenz* was decided at summary judgment, on a record that included the defendants' depositions and affidavits. The implication in *Saenz* was drawn from true statements about the

plaintiff's position. Here, by contrast, Appellee did not leave his audience to draw an inference from true facts. He stated the false fact himself. And where, as here, the speaker states a false fact directly, his lack of any basis for it is evidence of fabrication, not of innocent intent.

Additionally, in *Newton*, an *NBC Nightly News* segment reported on a federal investigation into a reputed mobster's ties to the singer Wayne Newton and his purchase of a Las Vegas casino. 930 F.2d at 666–67. The facts reported were "almost all . . . uncontroverted." *Id.* at 679. Newton claimed that the broadcasts nonetheless left the false "impression" that organized crime had helped finance the purchase in exchange for a hidden interest in the hotel. *Id.* at 667. After a 37-day trial, a jury returned a verdict of more than $19 million. *Id.*

The district court upheld liability, reasoning that even if the journalists had not intended that impression, it "should have been foreseen," and that the jury could disbelieve their testimony because the impression was "clear and inescapable." *Id.* at 680. The Ninth Circuit reversed. It held that the "should have been foreseen" standard "is an

objective negligence test," and that such an approach "would permit liability to be imposed not only for what was not said but also for what was not intended to be said." *Id.* at 680–81 (citing *Harte–Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 688–89 (1989)). Reviewing the trial record, including the journalists' testimony about their sources, the court then held that the law protects journalists "from liability based on errors of fact that arise from reliance on a credible source." *Id.* at 682–84.

Dir. Patel does not ask the Court to hold Appellee liable for an impression he should have foreseen, or for what he did not say. The Complaint alleges that Appellee said the false thing himself, and that he attributed it to "reports" that do not exist. ROA.10. And unlike *Newton*, which was decided after a lengthy trial, this case is at the pleading stage, where the question is only whether the allegations plausibly support an inference of actual malice.

Appellee's remaining argument—that allegations of ill will, bias, and animus are insufficient—likewise fails. Appellee's Br. 39–40. Dir.

Patel does not dispute that such allegations, standing alone, are insufficient. But Appellee goes further, relying on out-of-circuit and out-of-state authority, that these factors play "no role" in the actual malice analysis. *Id.* at 39 (quotation omitted). That is not Texas law. Under Texas law, while "[a] lack of care or an injurious motive in making a statement is not alone proof of actual malice, . . . care and motive are factors to be considered." *Bentley*, 94 S.W.3d at 596. Those factors are therefore relevant here, and they reinforce the inference that Appellee acted with actual malice.

## CONCLUSION

For the foregoing reasons and those stated in the Opening Brief, Dir. Patel respectfully requests that the Court reverse the district court's April 21, 2026 Memorandum Opinion and Order dismissing his Complaint and remand for further proceedings.

Dated: October 16, 2026

Respectfully submitted,

*/s/ Jason C. Greaves*
Jason C. Greaves
Tex. Bar No. 24124953

jason@binnall.com
BINNALL LAW GROUP
717 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 888-1943

*Attorney for Plaintiff-Appellant*

**CERTIFICATE OF SERVICE**

I certify that on October 16, 2026, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

*/s/ Jason C. Greaves*
Jason C. Greaves

*Attorney for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 4,284 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word (the same program used to calculate the word count).

*/s/ Jason C. Greaves*
Jason C. Greaves
jason@binnall.com

*Attorney for Plaintiff-Appellant*